**FIREMAN'S FUND INSURANCE COMPANY**

v.

**George W. MYERS, Appellant in No. 18509, and Regina Myers, Appellant in No. 18510.**

**Nos. 18509, 18510.**

United States Court of Appeals, Third Circuit.

Argued Sept. 29, 1970.[*]

Decided March 24, 1971.

---

* Pursuant to the Memorandum Order of this court dated December 17, 1970, a supplement to the record was received in this court on February 8, 1971. On March 5, 1971, defendants' counsel delivered to the Clerk of this court a document entitled COUNTER SUPPLEMENTAL RECORD, even though the Clerk had advised him by letter that any such document should be attached to a motion for leave to file it. This document has been treated as a brief of defendants. Insofar as it states that Mr. Myers and his counsel were present at the September 3 hearing (but see page 2 of above Supplement, being Document 56), this does not affect our conclusion in this opinion. Also we note that defendants should have ordered a transcript of what took place at that hearing (see paragraph 3 of December 17 order of this court).

See also D.C., 290 F.Supp. 405.

Lionel B. Gumnit, Philadelphia, Pa., for appellants.

Paul J. Donnelly, Philadelphia, Pa., for appellee.

Before GANEY, VAN DUSEN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This case is here on appeal from a December 8, 1969, order of the United States District Court for the Eastern District of Pennsylvania holding George W. Myers in contempt and granting a motion for "preliminary injunction" by requiring George W. Myers and Regina Myers to deposit with the Fireman's Fund Insurance Co. the proceeds of the sale of their residence.

In 1968 the George W. Myers Co., Inc. (Myers Company) was engaged in the building contracting business. In connection with certain public contracts of the Myers Company the plaintiff, Fireman's Fund Insurance Co. (Fireman's Fund), had executed performance, as well as labor and material, bonds. The defendants, George W. Myers and Regina Myers, had executed general indemnity agreements to indemnify Fireman's Fund against liability, loss, costs, etc., incurred by Fireman's Fund by reason of execution of surety bonds. The indemnity agreements provided that if Fireman's Fund set up a reserve to cover the bonds, the indemnitors, George W. Myers and Regina Myers, would immediately upon demand deposit with Fireman's Fund a sum equal to the amount of the reserve. The indemnity agreements also provided that the indemnitors assigned to Fireman's Fund, effective as of the date of each bond, but only in the event of default in the performance of the bonded contracts, all of their rights in the bonded contracts and in all

sums due or to become due under all other contracts in which any of the indemnitors have an interest.

In the spring of 1968, Myers Company began defaulting under various bonded contracts. On or about July 18, 1968, Fireman's Fund set up reserves in the amount of $170,000.00 to cover liabilities and claims arising under the bonds. On July 19, 1968, Fireman's Fund demanded, pursuant to the general indemnity agreements, that the indemnitors, George W. Myers and Regina Myers, deposit with Fireman's Fund the amount of the reserve. The indemnitors deposited nothing. On July 30, 1968, Myers Company was adjudicated a bankrupt.

During these weeks Fireman's Fund discovered that George W. Myers and Regina Myers had entered a contract for the sale of their residence at 630 Kismet Road, Philadelphia. Fireman's Fund took the position that this contract was a contract within the scope of the general indemnity agreements, and that those agreements operated as an assignment to Fireman's Fund of the sums due under this contract. Alleging that George W. Myers had informed them that the proceeds of the sale of the 630 Kismet Road property would be removed from Pennsylvania to Florida for the purpose of purchasing a new home there, Fireman's Fund commenced the present action on August 2, 1968. Among other requested relief,[1] the complaint sought a temporary restraining order and, after a hearing, a preliminary injunction restraining the defendants from receiving the proceeds of the 630 Kismet Road property, and requiring the same to be deposited with Fireman's Fund pursuant to the indemnity agreements.

After the complaint was filed, the district court on August 2, 1968, issued a temporary restraining order restraining the defendants from disposing of the proceeds of the sale of the 630 Kismet Road property. This temporary restraining order was not continued and therefore expired by its own terms within ten days of its issuance. *See generally* Fed.R.Civ.P. 65(b).

On August 20, 1968, summons and a copy of the complaint were validly served upon both defendants. That same day the defendants attended a closing and received the proceeds of the sale of the 630 Kismet Road property. As noted above, the temporary restraining order, restraining the receipt by the defendants of those proceeds, had expired at least one week before the defendants attended the closing and received the proceeds.

On August 23, 1968, the district court issued a temporary restraining order, restraining the defendants from disposing of, or using for their benefit, the proceeds of the sale of the 630 Kismet Road property. The temporary restraining order, which was by its own terms to expire within ten days of its issuance, fixed September 3, 1968, as the date for a hearing on the plaintiff's motion for a preliminary injunction. On the same day, August 23, 1968, the district court also issued a rule to show cause why George W. Myers should not be held in contempt. The rule was made returnable on September 3, 1968.

On September 3, 1968, a hearing was held on the plaintiff's motion for a preliminary injunction and the rule to show cause why George W. Myers should not be held in contempt. No action was taken at that time, and both matters were continued indefinitely. There is no indication in the record that the temporary restraining order of August 23, 1968,

---

1. The complaint also sought (a) specific enforcement of the general indemnity agreements, including specific enforcement of the demand that $170,000. be deposited with plaintiff as collateral, (b) exoneration of plaintiff by defendants from all liability on the performance bonds, (c) a judgment against defendants in such sum or sums as plaintiff has paid, and may pay, to all persons in discharge of its liability under the Performance, as well as Labor and Material, Bonds, and (d) costs and expenses due under the terms of the general indemnity agreements.

was continued in effect. It therefore expired by its own terms within ten days of its issuance. *See generally* Fed.R.Civ.P. 65(b).

More than a year later, on September 25, 1969, another hearing was held on the plaintiff's motion for a preliminary injunction and the rule to show cause why George W. Myers should not be held in contempt. On December 8, 1969, the district court issued a Memorandum Opinion with an order attached, which order [2] required the defendants to deposit with the plaintiff the proceeds of the 630 Kismet Road property, and held George W. Myers in contempt. From the part of the order requiring deposit of the proceeds of sale, both defendants appeal; from the part of the order holding George W. Myers in contempt, George W. Myers appeals.

At the outset we must determine whether this court has jurisdiction of either appeal. Although the issue of appealability was not briefed by the parties or presented in the oral argument before this court, we are required to raise the question *sua sponte* [3] in light of the district court record, as supplemented by documents received in this court on February 8, 1971.

## I.

### THE CONTEMPT

In order to determine whether the contempt order is an appealable final order within the conception of 28 U.S.C. § 1291 (1964), we must first determine the character of the contempt.[4] Although the distinction between civil contempt and criminal contempt is often cloudy, the important tests in determining the character of a contempt are the nature and purpose of the punishment.[5] Civil contempt is "wholly remedial," serves only the purpose of a party litigant, and is intended to coerce compliance with an order of the court or to compensate for damage caused by noncompliance.[6] Criminal contempt, on the other hand, is primarily punitive rather than remedial, serves to vindicate the authority of the court, and cannot be ended by any act of the contemnor.[7] On the basis of these principles, we conclude that the order before us is civil. Although there is language in the district court's memorandum opinion which suggests that a primary purpose of the order is vindication of the court's authority, the fact that George W. Myers can purge himself by depositing with Fire-

---

2. This December 8, 1969, order contained this language, inter alia:

   The rule to show cause why George W. Myers should not be held in contempt of Court is GRANTED subject to the following directive:

   The defendant shall be deemed to have purged himself of contempt if he shall within ten (10) days deposit with the plaintiff the net sum received from the sale of 630 Kismet Road, Philadelphia, which sum shall be held in escrow by the plaintiff pending the ultimate disposition of this case.

   The motion for a preliminary injunction is GRANTED. The defendants, George W. Myers and Regina Myers are hereby required to deposit with the plaintiff as security, the proceeds of the sale of 630 Kismet Road, Philadelphia.

   \*      \*      \*      \*      \*

   IT IS SO ORDERED.

3. Aetna Insurance Co. v. Newton, 398 F.2d 729 (3d Cir. 1968); Calistro v. Kean, 389 F.2d 619 (3d Cir. 1968).

4. The contempt was not characterized by the district court.

5. Shillitani v. United States, 384 U.S. 364, 369–370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797 (1911); Donato v. United States, 48 F.2d 142 (3d Cir. 1931).

6. McComb v. Jacksonville Paper Co., 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949); Penfield Co. of Cal. v. SEC, 330 U.S. 585, 590, 67 S.Ct. 918, 91 L.Ed. 1117 (1947); McCrone v. United States, 307 U.S. 61, 64, 59 S.Ct. 685, 83 L.Ed. 1108 (1939); Southern Ry. Co. v. Lanham, 403 F.2d 119, 124 (5th Cir. 1968).

7. Nye v. United States, 313 U.S. 33, 42–43, 61 S.Ct. 810, 85 L.Ed. 1172 (1941); Fox v. Capital Co., 299 U.S. 105, 57 S.Ct. 57, 81 L.Ed. 67 (1936); Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 442, 31 S.Ct. 492, 55 L.Ed. 797 (1911); Southern Ry. Co. v. Lanham, 403 F.2d 119, 124–125 (5th Cir. 1968).

man's Fund the net proceeds of the sale of the 630 Kismet Road property convinces us that the contempt order is civil. The order is designed to coerce compliance with previous district court orders, serves only the purposes of Fireman's Fund, and does not contain unconditional punitive sanctions.

As to a party to a suit, a civil contempt order, unlike a criminal contempt order, is interlocutory and reviewable only upon appeal taken from a final judgment or decree.[8] Since this is not an appeal from a final judgment or decree in this case, the contempt order is not a reviewable final order within 28 U.S.C. § 1291 (1964). The appeal by George W. Myers from the contempt order will accordingly be dismissed.

## II.

## THE REQUIREMENT FOR DEPOSIT OF THE PROCEEDS OF SALE AS SECURITY

■ Assuming that the order requiring the defendants to deposit with Fireman's Fund the proceeds of sale of the 630 Kismet Road property, as relief incident to the application for a preliminary injunction, is a final order within the conception of 28 U.S.C. § 1291 (1964), the district court did not conform its judgment to the requirements of Rule 54(b) of the Federal Rules of Civil Procedure.[9] The district court made no certification under Rule 54(b), and there was no request for such action by the parties. The judgment is therefore subject to revision at any time before the entry of judgment on all the claims presented in this action (see note 1 above). In this posture, the district court's order requiring the deposit of the proceeds cannot be regarded as final.

In United Bonding Insurance Co. v. Stein, 410 F.2d 483 (3d Cir. 1969), this court held that an order requiring the deposit of collateral was not appealable as an interlocutory injunction under the express provisions of 28 U.S.C. § 1292(a) (1).[10] The district court and the parties in that case had characterized the order as enforcing specific performance of the parties' agreement, and

---

8. Fox v. Capital Co., 299 U.S. 105, 57 S. Ct. 57, 81 L.Ed. 67 (1911); Southern Ry. Co. v. Lanham, 403 F.2d 119, 124 (5th Cir. 1968); In re Eskay, 122 F.2d 819 (3d Cir. 1941); Loufakis v. United States, 75 F.2d 627 (3d Cir. 1935). See 9 J. Moore, Federal Practice ¶ 110.13 [4], p. 167 (2d ed. 1970).

9. As this court noted in United Bonding Insurance Co. v. Stein, 410 F.2d 483, at 485 (3d Cir. 1969):

Congress has directed that "The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts." 28 U.S.C.A. § 1291. Federal Rule 54(b) provides that when more than one claim for relief is presented in an action, judgment on less than all the claims shall not be deemed final—and thus appealable—unless the district court so determines and directs. In addition, Rule 54(b) expressly states that:

"In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

Read together, Section 1291 of Title 28 and Federal Rule 54(b) thus present two essential ingredients for rendering a judgment final. First, the substance of the matter litigated and upon which the order is entered must be "final" within the statutory conception of Section 1291, and second, in a multiple claim action, the district court must conform its judgment to the requirements of Rule 54(b).

10. 28 U.S.C. § 1292(a) (1) (1964) provides:

§ 1292. Interlocutory decisions

(a) The courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court.

had never characterized it as a preliminary injunction of a mandatory character. Almost the reverse is true in this case. But we noted in *United Bonding* that "the label used to describe the judicial demand is not controlling," [11] and we cannot now allow form to prevail over substance.

When Fireman's Fund sought a preliminary injunction by motion on August 23, 1968, it sought an order restraining the defendants from disposing of, or using for their benefit, the proceeds of the sale, and requiring them to deposit said proceeds with Fireman's Fund as security pursuant to the indemnity agreement. At the time the district court ruled on the motion, it noted that George W. Myers had already "disposed of the proceeds of the sale." Thus it was impossible at that juncture to restrain the defendants from disposing of the proceeds, or using them for their benefit. The "irreparable harm" that had been alleged as a basis for the granting of a preliminary injunction had occurred at this point. No longer being able to afford the requested injunctive relief, the court ordered the defendants "to deposit with the plaintiff as security, the [amount of the] proceeds of the sale of 630 Kismet Road." What began as an action for injunctive relief, characterized by the elements of timely action and irreparable injury, was transformed by events and the passage of nearly 16 months into an action for specific performance.

Although the facts of this case are not precisely identical to those in *United Bonding*, the order appealed from is identical in substance, operation and effect to the order declared unappealable in *United Bonding*. The only difference in the order in this case is that it has less of a final character, being less dispositive of the substantive rights of the parties. In this posture, the order can-

not be considered the "granting" of an "injunction" as contemplated by 28 U.S.C. § 1292(a) (1).

For the foregoing reasons, the appeals will be dismissed.

---

11. *See* Independent Petroleum Workers of N. J. v. Esso Standard Oil Co., 235 F.2d 401, 405 (3d Cir. 1956).