**Ricky CONFER and Holly Confer, his wife, and Erie Indemnity Co., Plaintiffs,**

v.

**CUSTOM ENGINEERING CO. EMPLOYEE HEALTH BENEFIT PLAN, a/k/a Custom Engineering Co. Health Benefit Program, Custom Engineering Co., Trustee, Theodore E. Flower and Peter Traphagen, Defendants.**

**CUSTOM ENGINEERING CO., Theodore E. Flower and Peter Traphagen, Defendants and Third Party Plaintiffs,**

v.

**SELF–FUNDED PLANS, INC., Third Party Defendant.**

Civ. A. No. 89–69 Erie.

United States District Court, W.D. Pennsylvania.

April 3, 1991.

Mary Beth Kotcella, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiffs.

Joseph A. Massa, Jr., Warren, Pa., William J. Cluck, Saul Ewing Remick & Saul, Philadelphia, Pa., Mark M. Ristau, Warren, Pa., for defendants.

## MEMORANDUM OPINION

MENCER, District Judge.

By this action, Plaintiffs seek to recover benefits owed under the Custom Engineering Co. Employee Health Benefit Plan (the "Plan") maintained by the Custom Engineering Company ("Custom"). Custom and the Plan, in turn, have sued Self–Funded Plans, Inc. (Self–Funded), the third party defendant, for indemnification. By our order of January 9, 1991 we granted plaintiff's summary judgment motion as to two parties; judgment was entered for the plaintiffs against the plan and Custom. The third party claim was not the subject of any motions, and accordingly, the claim between the defendant and Self–Funded remains active.[1] Currently pending before us is the defendants' motion for reconsideration. The defendants make two arguments regarding the amount of damages that they failed to press on the original motion. For the reasons set forth below, that motion is denied.

1. The order reads, in full:

AND NOW, this 9th day of January, 1991, for the reasons set forth in the accompanying memorandum opinion,

IT IS HEREBY ORDERED THAT:

(1) The Motion for summary judgment of defendants THEODORE E. FLOWER and PETER TRAPHAGEN is GRANTED. Judgment is entered in favor of defendants THEODORE E. FLOWER and PETER TRAPHAGEN and against plaintiffs RICKY CONFER and HOLLY CONFER and ERIE INDEMNITY COMPANY.

(2) The Motion for summary judgment of plaintiffs RICKY CONFER and HOLLY CONFER and ERIE INDEMNITY COMPANY is GRANTED as to the defendant CUSTOM ENGINEERING CO. EMPLOYEE HEALTH AND BENEFIT PLAN a/k/a CUSTOM ENGINEERING CO. EMPLOYEE HEALTH AND BENEFIT PROGRAM and defendant CUSTOM ENGINEERING COMPANY. Judgment is entered in favor of plaintiffs RICKY CONFER and HOLLY CONFER and ERIE INDEMNITY COMPANY and against defendants CUSTOM ENGINEERING CO. EMPLOYEE HEALTH AND BENEFIT PLAN a/k/a CUSTOM ENGINEERING CO. EMPLOYEE HEALTH AND BENEFIT PROGRAM and CUSTOM ENGINEERING COMPANY in the amount of $142,321.95 together with interest. Defendant CUSTOM ENGINEERING CO. EMPLOYEE HEALTH AND BENEFIT PLAN a/k/a CUSTOM ENGINEERING CO. EMPLOYEE HEALTH AND BENEFIT PROGRAM is further directed to cover all future medical expenses under the unamended Custom Engineering Co. Employee Health and Benefit Plan in effect on April 1, 1985.

(3) The Motion for summary judgment of plaintiffs RICKY CONFER and HOLLY CONFER and ERIE INDEMNITY COMPANY is DENIED as to third party defendant SELF–FUNDED PLANS, INC. Judgment is entered in favor of third party defendant SELF–FUNDED PLANS, INC. and against plaintiffs RICKY CONFER and HOLLY CONFER and ERIE INDEMNITY COMPANY.

(4) The Motion for award of reasonable attorney's fees and costs of plaintiffs RICKY CONFER and HOLLY CONFER and ERIE INDEMNITY COMPANY is GRANTED. Plaintiffs are directed to submit documents detailing and supporting the amount requested within thirty (30) days. Defendants will then have 20 (twenty) days to submit responses thereto.

## I.

Defendants do not base this motion on any particular rule, they just ask for reconsideration. However, neither of the traditional vehicles for reconsideration—Fed.R. Civ.P. 59(e) Fed.R.Civ.P. 60(b)—apply, because our order is not a final judgment. See *Juzwin v. Amtorg, Trading Corp.,* 718 F.Supp. 1233, 1234 (D.N.J.1989); Fed.R. Civ.P. 54, 59(e), 60(b). The only vehicle for reconsideration then, is Fed.R.Civ.P. 54 which provides that until we finally adjudicate all claims as to all parties, we retain the discretion to modify any earlier order. *Juzwin,* supra; *Oritani S & L v. Fidelity & Deposit,* 744 F.Supp. 1311 (D.N.J.1990). Before we exercise our discretionary power, however, we must address the standards which govern it.

■ The standard for granting a motion for reconsideration under Rule 54 is undoubtedly less rigid than under 60(b). See Fed.R.Civ.P. 60(b) Advisory Committee's Notes; *Farr Man & Co., Inc. v. M/V Rozita,* 903 F.2d 871 (1st Cir.1990). But while a party seeking reconsideration of an interlocutory order need not meet the "stricture[s] ... of Rule 60(b)," *Farr Man,* 903 F.2d at 875, we attach considerable import to the rendering of a judgment—final or not. Regardless of the subject order, "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906 (3d Cir.1985). Allowing reconsideration motions for lesser causes not only wastes judicial resources, but is also unfair to parties that invest time and effort arguing on the original papers. If one party moves for disposition of an interlocutory issue, we shall not permit the other to forego making arguments in order that they may choose a more convenient time to come to court asking us to abandon the work previously done. "Each step of the litigation process should build upon the last and, in the absence of newly discovered,

non-cumulative evidence, the parties should not be permitted to reargue previous rulings made in the case." *Oritani,* 744 F.Supp. at 1314.[2]

■ The Advisory Committee states that Motions for reconsideration of interlocutory orders "are left subject to the complete power of the court rendering them to afford such relief from them as justice may require." Fed.R.Civ.P 60(b) Advisory Committee's Notes. We believe justice and sound principles of judicial administration require that we consider (1) the concerns of rule 60(b): "Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud;, etc." Fed.R.Civ.P 60(b). If one of these tests is met, of course, reconsideration should be granted and the court should proceed to the substantive merits of the claim. However, because we have more discretion before a final judgment is entered, we will also consider (2) the nature of the interlocutory order—its comprehensiveness and the attention it received—and (3) the movant's likelihood of success on the merits. A summary order without briefs, for example, will be more easily modified than fully briefed motions for summary judgment. With respect to number (3), we should make a cursory review of the merits of the substantive claim, and if the ruling appears clearly erroneous or manifestly unjust, reconsideration should be more likely than if the issues are unclear. Such review is only cursory, however, since requiring a more thorough review of the substantive claim would be tantamount to according the original judgment no finality.

## II.

■ In our original opinion, we awarded specific damages to the plaintiff because we found that defendants had not mounted any real challenge on point. *Confer, et al. v. Custom Engineering, et al.,* Civ. Action

---

**2.** The New Jersey cases, *Oritani* and *Juzwin,* were based on Local Rule 12(I) of the District of New Jersey. "Rule 12I of the General Rules of this court requires a party moving for reconsideration to set forth concisely 'the matters or controlling decisions [that party] believes the Court has overlooked.'" *Juzwin,* 718 F.Supp. at 1234. This district has no local rule on point.

No. 89–69E (W.D.Pa. 1/9/91) at p. 6.[3] Now, defendants raise two arguments regarding the damages awarded, both of which could have easily been raised on the motion for summary judgment. The first is that they are entitled, under a subrogation agreement, to set off the damages by the payment the Confers collected as a result of the accident. Apparently they are claiming that this court overlooked subrogation through inadvertence or mistake.

Defendants claim that they pressed this argument by including it in their answer and in their pretrial narrative. In both locations, however, defendants make only the baldest of conclusory allegations; they do not point to any provision or case or make any argument whatever. In fact, defendants freely admit that because "the document itself was made part of the record," Defendants Supplemental Brief at 7, they expected this court to search through its provisions and make their argument for them. We are not up to such a task, and defendants have shown no inadvertence or mistake here based on our failure to attempt it. It is their responsibility to make arguments in favor of their client. See *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 2512–52 (7th Cir.1987).

The next argument relevant to the 60(b) factors seems to fall somewhere near excusable neglect or newly discovered evidence. Although admittedly only "by way of explanation," plaintiffs state that there was no likelihood of success on the subrogation claim because of controlling Third Circuit precedent.[4] *FMC Corp. v. Holliday*, 885 F.2d 79 (3d Cir.1989), they point out, specifically upheld the Pennsylvania law prohibiting subrogation under similar circumstances. Now, however, they continue, since the Supreme Court has reversed that decision, *FMC Corp. v. Holliday*, —— U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), they ought to be able to bring their subrogation claim up. First, defendants should have known that certiorari had been granted. Second, the Supreme Court decision was handed down on November 27, 1990, but we ruled on the summary judgment motion on January 9, 1991, six weeks later. Furthermore, even in the face of the Third Circuit opinion, defendants managed to vigorously press arguments which were substantially more frivolous than the subrogation claim. For example, defendants argued that they could back date an amendment to an ERISA plan to deny currently due benefits, and that they could amend a plan solely by posting an obscure notice on a bulletin board, and that an amendment could cut off benefits after benefits had accrued. We find that the 60(b) factors do not weigh in favor of granting reconsideration here.

Our next consideration—the nature of the order—also demands that reconsideration be denied. The briefs were extensive, ruling on all claims as to most parties. Only the completely separate issue of indemnification remains. As to the final consideration, our cursory review reveals that the movants have a poor likelihood of success on the merits of the substantive claim. Under either state law or federal common law, *Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters and Em-*

---

**3.** In section E of their brief, entitled *"The court should not award attorney's fees in this case,"* Defendants Brief in Opposition to Plaintiff's Motion for Summary Judgment at 5, defendants stated that "[t]here are other questions concerning the amount of damages which would have to be decided by the court if it rules in Plaintiffs' favor on the summary judgment motion." *Id.* at 6. As examples, defendants briefly mention issues regarding termination of the plan, each one of which the court addressed in deciding the motion. Notably lacking, however, are the arguments they press on reconsideration. Although they state that "[t]he purpose of the above has not been to exhaust the range of issues which may face the court, but simply to point out that there can be no neat and simple mathematical calculation of damages as suggested by the plaintiffs," *Id.,* we cannot put our disposition of this case on hold until the defendants feel it is convenient to make their arguments known. We will not speculate as to how much defendants needed to put forth to preclude judgment as to damages. Perhaps, just listing their objections would have sufficed. It is beyond cavil however, that merely proclaiming the existence of "other questions" is insufficient.

**4.** Defendants do not state that the poor prognosis for such a claim actually played any part in their decision not to press it.

*ployers Pension Fund,* 847 F.2d 113, 121 (3d Cir.1988); *FMC Corp. v. Holliday,* —— U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), subrogation is guided by principles of equity, *Roberts v. Fireman's Insurance Co.,* 376 Pa. 99, 101 A.2d 747 (1954); *Daley–Sand v. West American Ins. Co.,* 387 Pa.Super. 630, 564 A.2d 965, 970 (1989); *Mellon Bank v. Barclays American Business Credit, Inc.,* 527 F.Supp. 251, 255 (W.D.Pa.1981), and here the equities do not favor defendants at all. They back dated an amendment to an ERISA plan in flagrant violation of the law, and it has been five years since the injury but they consistently refuse all coverage when they clearly owe at least a substantial portion of it. Furthermore, subrogation is not appropriate until the insured has been fully compensated, *Nationwide Mutual Ins. Co. v. DiTomo,* 330 Pa.Super. 117, 478 A.2d 1381, 1383 (1984), and it certainly does not appear that the Confers have been made whole.

The other argument this court supposedly overlooked centers on a plan provision which, defendants argue, automatically cut off benefits on June 1, 1986 when Confer's employment was terminated.[5] See Defendants' Brief in Support of Motion for Reconsideration at 6 (Plan p. 6). Again, defendants make the startling implication that because they had placed the plan in the record, we should have read this provision, understood the context in which it was written, determined the parties' intent or other possibly relevant factors, did legal research on any ambiguity, and decided the issue in their favor. In order that defendants seem equitable, we will assume that they would have had the plaintiffs take on similar tasks to refute the inchoate arguments defendants might have made—or may yet make in reconsideration motions to come. Lawyering would be an easy profession indeed, if all it required was the entry of relevant documents into the record. We will not make defendants' arguments for them.

Defendants managed to extensively brief and cogently argue both that coverage terminated when a purported amendment was made, and in the alternative, that it terminated on April 1, 1986, the first full plan year after a successful amendment. There is no reason to allow them now to come forward with the argument that a term of the plan which had always been present and apparent, that had never been questioned or the subject of any amendment or any other complication, somehow terminated plaintiffs' coverage. The effect of the provision they point to is questionable, but the time for answering such questions has long since passed.

---

**5.** Defendants argue that paragraph two of our order which directs coverage for future benefits,

supra note 1, is in conflict with this provision.